W. C. CHAUNCY v. THE ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 4 April, 1928.)

**Property—Nature—Fructus Naturales; Fructus Industriales—Lessee Not Entitled to Damages for Negligent Destruction of Fructus Naturales—Landlord and Tenant—Crops.**

Broom sage growing upon leased farm land, not requiring cultivation, is not regarded as *fructus industriales* or in the nature of personal property belonging to the tenant, except as to so much as may be required by him in connection with the use of the land; and where the land has broom sage growing thereon, he is not the owner thereof in the sense that he may maintain an action against one who has negligently destroyed it by fire, except only for its value for farming purposes on its leased premises.

APPEAL by defendant from *Harris, J.,* and a jury, at September Term, 1927, of PITT. New trial.

This is an action for actionable negligence brought by plaintiff against defendant, who was in possession of certain lands, 25 acres, under lease for 1923.

The plaintiff alleges: "That at the time of said destruction of plaintiff's said field of broom sage, through the negligence and carelessness of defendant, its servants and agents, plaintiff was marketing said broom sage in bales for use by horse dealers and livery stables, as bedding for horses and cattle, and that said broom sage thus marketed had a commercial or market value of $15.00 per ton, and that at the time said fire complained of, plaintiff had sold all of said twenty-five acres of broom sage and had a contract for delivery of same in bales to one J. E. Winslow, Greenville, North Carolina, at an agreed price of $15.00 per ton, and that said twenty-five acre field of broom sage before its

destruction by fire through the negligence and carelessness of defendant as herein set out and complained of, had a conservatively estimated yield for the current year of one ton of broom sage per acre, at a total market value for the twenty-five acres sold and contracted for by J. E. Winslow, of $375.00, less the expense of cutting, baling and marketing of $5.00 per acre, or a total expense of said twenty-five acres of $125.00, leaving the net profit or value of said twenty-five acres of broom sage, destroyed as aforesaid, at a total loss to plaintiff of $250.00."

The issues submitted to the jury and their answers thereto, were as follows:

"1. Was plaintiff, on 10 March, 1923, in possession, under lease of the premises described in the fourth paragraph of the complaint? Answer: Yes.

"2. Was the fire damage complained of caused by the negligence and carelessness of the defendant, its agents or employees? Answer: Yes.

"3. If so, what amount in damage is plaintiff entitled to recover of defendant by reason thereof? Answer: $175.00."

The material facts and assignments of error will be considered in the opinion.

*D. M. Clark for plaintiff.*
*Skinner, Cooper & Whedbee for defendant.*

CLARKSON, J. The plaintiff testified, in part: "I entered possession of this land sometime in February, 1923, I did not plant this broom sage, nobody plants it. I do not think I ever heard of anybody planting it. I do not know that a lot of work is done by people trying to get rid of it any more than any other grass or weed. It grows on land laying out, on land you let lay out is where it grows. It requires no cultivation at all. It grows from year to year. I really think it will produce more thrifty once in a while if you cut it than where you do not. This broom sage was already growing on the land when I rented it and the straw that was upon the place when I rented it. It was the straw that was burned. . . . I had not cut on this farm and at the time of the fire, the broom sage was standing there in the same condition as when I leased the place. I had contracted to sell it. . . . All I engaged to sell was that I had on this particular farm."

There was no evidence in the record that the lessor of plaintiff had sold him this growing, uncut broom straw. The plaintiff rented the land for the year 1923, and the broom straw was burned, it is alleged, by the negligence of the defendant, when standing and growing uncut.

The principle is set forth in Vol. 1, Thompson on Real Property, part sec. 117, p. 131: "Whether growing crops are realty or personalty depends largely on the nature of the transaction giving rise to the question.

In some cases they may be realty while in others they are considered personalty. At common law growing crops raised annually by labor and cultivation are personal property, and may be sold and transferred as chattels, by parol. By the great weight of authority, this rule applies to annual crops owing their existence to the cultivation by man, even while such crops are annexed to the soil. But at common law, grasses growing from perennial roots are regarded as *fructus naturales,* and while unsevered from the soil, are considered as pertaining to the realty." 8 R. C. L., p. 356.

"The tenant is entitled to the possession of the lands and of the crop while it is being cultivated, and may maintain, in his own name, an action for any injury thereto, and for this purpose he is the 'real party in interest' within the spirit and meaning of section 177 of The Code (C. S., 446)." *Bridgers v. Dill,* 97 N. C., p. 227.

In *Brittain v. McKay,* 23 N. C., at p. 268, this Court said: "But the law makes a pointed distinction, between those profits which are the spontaneous products of the earth or its permanent fruits, and the corn and other growth of the earth which are produced annually by labor and industry, and thence are called *fructus industriales.* The latter for most purposes are regarded as personal chattels."

In *Lewis v. McNatt,* 65 N. C., at p. 65, it is held: "Crude turpentine which has formed on the body of the tree, and is usually known as 'scrape,' is personal property, and belongs to the person who has lawfully produced it by cultivation. *S. v. Moore,* 11 Ire., 70. It is an annual product of labor and industry, and although it adheres to the body of the tree it is not a part of the realty. The turpentine crop may be properly classed with *fructus industriales,* for it is not the spontaneous product of the trees, but requires annual labor and cultivation. Upon a similar principle, hops which spring from old roots have long been regarded as emblements. . . . *Brittain v. McKay,* 1 Ire., 265."

In *Smithwick v. Ellison,* 24 N. C., p. 326, it is held: "A tenant, who is about to remove, has a right, where there is no covenant nor custom to the contrary, to all the manure made by him on the farm; it is his personal property and he may take it with him. But the manure ceases to be his, if he leaves it when he quits the farm. Taking up with the manure the slight portion of the earth, which is necessarily mixed with it in raking it into heaps, will not make the tenant a *tort-feasor."* *Sanders v. Ellington,* 77 N. C., 255, 257.

The evidence is sufficient to be submitted to the jury as to the negligent burning.

If the landlord in the lease had agreed that plaintiff could cut and remove and sell the broom straw, it would be another matter, but there is no evidence in the record to that effect.

27—195

Plaintiff's damages, on the present record, should have been confined to whatever loss, if any, he sustained as lessee of the premises—the value of the broom straw for farming purposes on the leased premises. For the reasons given, there must be a

New trial.