Civil action to restrain the defendant from removing "any buildings, structures, equipment and appliances placed or installed upon the premises of the plaintiffs at the northeast corner of West Trade and Pine streets in the city of Charlotte prior to the first day of July, 1932."
The facts alleged are these:
1. On 17 June, 1929, the plaintiffs leased the premises in question to John F. Boyd and C. E. B. Mendenhall as a filling-station site for a period of three years beginning 1 July, 1929, and ending 30 June, 1932. Said lease which is in writing and duly registered contains the following stipulation: *Page 446 
"Lessors hereby agree that the lessees may erect on said property such buildings, structures, or equipment as they may desire for carrying on their business and the lessees shall have the right to remove said buildings from said property at the termination of this lease."
2. On 27 July, 1929, Boyd and Mendenhall assigned their lease to the Red "C" Oil Company, a wholly owned subsidiary of the Atlantic Refining Company. These two companies were later merged and were in continuous possession of said premises up to 30 June, 1933. At the time of the merger the lease was again assigned to the present defendant.
3. On 21 August, 1929, Boyd and Mendenhall, by "Bill of Sale," sold and delivered to the Red "C" Oil Company, its successors and assigns, for a consideration of $4,500, "the building, cement driveway and cement wash-pit," which they had erected on plaintiffs' premises in accordance with the terms of the original lease, with the same right of removal as assignors had, etc.
4. On 22 June, 1932, the plaintiffs leased to the defendant, Atlantic Refining Company, already in possession under the prior assigned lease, the premises in question for a period of one year, beginning 1 July, 1932, and ending 30 June, 1933. Said lease, which is in writing and duly registered, also contains a stipulation with respect to removing buildings, structures, equipment and appliances placed thereon by the lessee for filling station purposes, "at the termination of this lease, and for a period of ten days thereafter."
5. It is alleged by the defendant that the assignment of the Boyd and Mendenhall lease to the Red "C" Oil Company, "was made with the knowledge and express consent of the plaintiffs," and that the said buildings and other improvements placed thereon by Boyd and Mendenhall are now "the sole and exclusive property of the defendant and it has the right to remove the same from said premises."
6. It is further alleged by plaintiffs that the defendant is attempting to remove the buildings and improvements erected on said premises by Boyd and Mendenhall.
Wherefore, plaintiffs pray that defendant be permanently enjoined from removing said buildings and improvements. The temporary restraining order was made permanent on the return hearing, and from the order, thus entered, the defendant appeals, assigning errors.
It is alleged in the complaint that Boyd and Mendenhall sublet the premises in question to the Red "C" Oil Company, but as they parted with their entire interest in the demised premises, what really *Page 447 
took place was an assignment or sale of the lease. Millinery Co. v.Little-Long Co., 197 N.C. 168, 148 S.E. 26. And as this was done with the knowledge and express consent of the plaintiffs, it would seem that the assignees were in under the original lease with the same rights which their assignors had with respect to removing buildings and improvements placed thereon by Boyd and Mendenhall. Causey v. Orton, 171 N.C. 375,88 S.E. 513.
It is further alleged in the answer that the buildings and other improvements erected or placed upon the demised premises by Boyd and Mendenhall are now "the sole and exclusive property of the defendant and it has the right to remove the same from said premises." Under this allegation, it would seem the defendant is entitled to show, if it can, its right to remove the said buildings and improvements. Belvin v. Paper Co.,123 N.C. 138, 31 S.E. 655; R. R. v. Deal, 90 N.C. 110.
The injunction was made permanent — not simply continued to the hearing — upon the theory that the defendant, being a tenant in possession, is estopped to deny the plaintiffs' title to the buildings and improvements placed thereon prior to the beginning of defendant's present lease, 1 July, 1932.
It is undoubtedly a well settled principle of law, that where the conventional relation of landlord and tenant exists, and the latter takes possession of the demised premises under a lease from the former, the tenant will not be permitted to dispute the title of the landlord, either by setting up an adverse claim to the property or by undertaking to show that it rightfully belongs to a third person, during the continuance of such tenancy. Hobby v. Freeman, 183 N.C. 240, 111 S.E. 1; Clapp v.Coble, 21 N.C. 177. But this wholesome and salutary principle, supported both by authorities and considerations of public policy, we apprehend is not necessarily controlling in a case like the present, where the removal of buildings and improvements placed upon the premises by the tenant is expressly provided for in the agreement between the parties. Causey v.Orton, supra; Freeman v. Leonard, 99 N.C. 274, 6 S.E. 259; Feimster v.Johnson, 64 N.C. 259.
Speaking to the subject in Insurance Co. v. Totten, 203 N.C. 431,166 S.E. 316, it was said: "That a tenant who takes possession of demised premises under a lease from the landlord, or being in possession unconditionally agrees to hold as such (Riley v. Jordan, 75 N.C. 180), will not be permitted to dispute the landlord's title, during the continuance of the tenancy, is established by all the authorities on the subject. Hobby v. Freeman, 183 N.C. 240, 111 S.E. 1; Clapp v. Coble,21 N.C. 177. But this principle, founded upon reasons of public policy, applies only in cases where the simple relation of landlord and tenant exists (Abbott v. Cromartie, 72 N.C. 292), and does not extend *Page 448 
to instances where title to the property is brought in question or equities are to be adjusted between the parties. Hughes v. Mason, 84 N.C. 473;Hauser v. Morrison, 146 N.C. 248; Turner v. Lowe, 66 N.C. 413."
The doctrine of fixtures has been the subject of much consideration by the courts. A number of interesting cases appear in our own Reports, and they abound with many niceties and distinctions.
For example, in Smithwick v. Ellison, 24 N.C. 326, speaking of the right of a tenant to remove manure made on a farm during the tenancy, it was said: "Whatever things the tenant has a right to remove ought to be removed within the term; for, if the tenant leave the premises without removing them, they then become the property of the reversioner. But where the tenant holds over, even so as to become a trespasser, he will not be considered as having abandoned the things he had a right to remove." Compare 11 R. C. L., 1080.
Likewise, in Feimster v. Johnson, 64 N.C. 259, where it was held that a still "set up and encased in masonry in the usual way" did not become a part of the realty, contrary to the intention of the parties, the Court taking occasion to say: "As a general rule, whatever is attached to land is understood to be a part of the realty; but as this depends, to some extent, upon circumstances, the rights involved must always be subject to explanation by evidence. Whether a thing attached to land be a fixture or chattel personal depends upon the agreement of the parties, express or implied. Naylor v. Collins, 1 Taunt., 19; Perry v. Brown, 2 Stark., 403;Wood v. Hewitt, 55 E. C. L., 913. A building, or other fixture which is ordinarily a part of the realty, is held to be personal property when placed on the land of another by contract or consent of the owner."
Again, in Sanders v. Ellington, 77 N.C. 255, holding that a crop cultivated by a tenant and left standing in the field after the expiration of his term becomes the property of the landlord, the Court observed: "A tenant for years may remove fixtures and anything put there by himself, provided he does so before his term expires; but after that, all of such things belong to the owner of the land, and the quondam tenant has no right to put his foot upon the land except by license of the owner. All of the cases agree that such is the law." See, also, Chauncy v. R. R.,195 N.C. 415, 142 S.E. 327.
But coming nearer to the subject in hand, it was said in Horne v. Smith,105 N.C. 322, 11 S.E. 373, that as between landlord and tenant, the intent with which fixtures are attached to the freehold becomes material, and if it appear that they were for the better temporary use of the premises, they may be treated as "trade fixtures," and hence removable.Causey v. Plaid Mills, 119 N.C. 180, 25 S.E. 863. *Page 449 
The liberality extended a tenant, in favor of trade and to encourage industry, may not apply as between vendor and vendee or mortgagor and mortgagee. Pritchard v. Steamboat Co., 169 N.C. 457, 86 S.E. 171;Overman v. Sasser, 107 N.C. 432, 12 S.E. 64; Foote v. Gooch, 96 N.C. 265,1 S.E. 525; Bond v. Coke, 71 N.C. 97; Latham v. Blakely, 70 N.C. 368. The reason for the rigid enforcement of the rule in the one case and its relaxation in the other is clearly pointed out by Pearson, C. J., inMoore v. Valentine, 77 N.C. 188. When fixtures are annexed to the land by the owner, actual or potential, the purpose is to enhance the value of the freehold, and to be permanent. But with the tenant a different purpose is to be served, hence for the encouragement of trade, manufacturing, etc., the tenant is allowed to remove what has apparently become affixed to the land, if affixed for the purposes of trade, and not merely for the better enjoyment of the premises. Pemberton v. King, 13 N.C. 376; Basnight v.Small, 163 N.C. 15, 79 S.E. 269.
Our present consideration is limited to the relative rights of landlord and tenant. See Overman v. Sasser, supra, where the subjects are classified and distinguished and the rules applied to the different classes.
It is the position of the plaintiffs that the defendant cannot now avail itself of any right of removal given to Boyd and Mendenhall, for even though at one time the said defendant may have stood in the shoes of Boyd and Mendenhall, as assignee of their lease, having failed to remove said building and improvements at or before the end of the term, or to reserve said right in the new lease, the fixtures thereby passed by operation of law to the plaintiffs as owners of the property. Precht v. Howard,187 N.Y., 136, 79 N.E. 847.
The apparent majority-holding is to the effect that where, at the expiration of a lease during which trade fixtures have been erected on the premises by the tenant, a new lease is taken of the same premises containing no reservation of any right or claim of the tenant to the fixtures placed thereon during the life of the first lease, such fixtures are not removable by the tenant during or at the expiration of the second lease, notwithstanding his continuous possession of the premises. 11 R. C. L., 1072; 26 C. J., 708. There is, however, a strong line of authority to the contrary. Thomas v. Gayle, 134 Ky. 330, 120 S.W. 290, 20 Ann. Cas., 766, and note. And many courts hold that the execution of a new lease without a reservation of the right of the tenant to remove fixtures placed on the demised premises under a prior lease does not ipso facto deprive the tenant of the right of removal at the expiration of the new lease. Ogden v.Garrison, 82 Neb. 302, 117 N.W. 714, 17 L.R.A. (N.S.), 1135; Kerr v.Kingsbury, 39 Mich. 150, 33 Am. St. Rep., 362; Radey v. McCurdy,209 Pa. 306, 103 Am. St. Rep., 1009, *Page 450 
58 A. 558, 67 L.R.A., 359; Bergh v. Herring-Hall-Marvin Safe Co., 136 Fed., 368, 70 L.R.A., 756.
The precise question seems not to have been heretofore presented in this jurisdiction, but the trend of our decisions apparently favors the minority view, or at least the right of the tenant to show the intention of the parties, if contrary to the strict rules of the common law. Bank v. Cox,171 N.C. 76, 87 S.E. 967; Finance Co. v. Weaver, 199 N.C. 178,153 S.E. 861; Cox v. Lighting Co., 151 N.C. 62, 65 S.E. 648; Feimster v.Johnson, supra.
Thus, in R. R. v. Deal, 90 N.C. 110, we find Merrimon, J., animadverting on the subject as follows:
"It is the policy of the law to encourage trade, manufacturers, and transportation, by affording them all reasonable facilities. Buildings, fixtures, machinery, and such things, certainly intended and calculated to promote them, are treated, not as part of the land, but distinct from it, belonging to the tenant, to be disposed of or removed at his will and pleasure. Hence if a house, or other structure, is erected upon land only for the exercise of trade or the mixed purpose of trade and agriculture, no matter how it may be attached to it, it belongs to the tenant, and may be removed by him during his term, and in some classes of cases, after it is ended. . . . There are authorities which decide that the tenant may remove the buildings while he remains in possession of the land, but not after he has yielded possession thereof. These go upon the ground that if the tenant neglect to avail himself of his right within the period of his term, the law presumes that he voluntarily relinquished or abandoned his claim in favor of the landlord, but such presumption cannot arise, where the facts and circumstances, and the nature of the property, and the uses to which it is devoted, combine to rebut such a presumption. If the tenant yields possession and leaves the structure standing, this fact may be evidence that it was not used or intended only for the purpose of trade or manufacture, or of abandonment of it, but it could not change the established character of the property. The character of the structure, its purpose and the circumstances under which it was erected, the understanding and agreement of the parties at the time the erection was made, must all be considered in determining whether it became a part of the freehold or not."
Finally, it may be said that what constitutes a "trade fixture," which is attached to the demised premises by a tenant and removable by him at the end of his term, either as a matter of right, or by special agreement, depends upon the facts of the particular case. 11 R. C. L., 10701082-1083. The general principles applicable to the question are well settled, but the courts have experienced much difficulty in applying them to variant fact situations. 11 R. C. L., 1075. "What are fixtures and *Page 451 
what are not has become to be a very important question. It is presented in so many ways and under so many different circumstances that it is not always easy to determine what are and what are not such fixtures as to become a part of the realty and pass as a part thereof under a conveyance or a transmission of the real estate" — Furches, J., in WoodworkingCo. v. Southwick, 119 N.C. 611, 26 S.E. 253.
In the present state of the record, which seems somewhat meager and might have been prepared more in conformity to the rules (Carter v. Bryant,199 N.C. 704, 155 S.E. 602), we think the court erred in doing more than continuing the injunction to the hearing.
Where the main purpose of an action is to obtain a permanent injunction, and the evidence raises serious questions as to the existence of facts, which, if established, would entitle the plaintiff to the relief demanded, the usual practice is to continue the temporary restraining order to the hearing. Proctor v. Fertilizer Works, 183 N.C. 153, 110 S.E. 861;Sutton v. Sutton, 183 N.C. 128, 110 S.E. 777; Tise v. Whitaker,144 N.C. 508, 57 S.E. 210.
Error and remanded.