**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROANOKE PROPERTIES LIMITED
PARTNERSHIP, a North Carolina
Limited Partnership,
Plaintiff-Appellant,

v.

SIDNEY O. DEWBERRY; DWIGHT F.
STEPHENSON; RONALD B. SMITH,
Defendants-Appellees,

and

DEWBERRY & DAVIS,
Defendant & Third Party Plaintiff-
Appellee,

and

JOHN STEVENSON,
Defendant,

v.

GLENN ELLIOTT FUTRELL,
INCORPORATED; LRM INCORPORATED;
ROGERS-BAKERS PROPERTIES,
INCORPORATED; A. GLENN BARWICK
PROPERTIES, INCORPORATED; EASTERN
CAROLINA LAND DEVELOPMENT,
INCORPORATED; BARRY MARTIN
PROPERTIES, INCORPORATED; LAND
CONSULTANTS OF THE SOUTH,
INCORPORATED; MANTEO INVESTMENT
ASSOCIATES, INCORPORATED,
Third Party Defendants.

No. 97-1905

ROANOKE PROPERTIES LIMITED
PARTNERSHIP, a North Carolina
Limited Partnership,
Plaintiff-Appellee,

v.

SIDNEY O. DEWBERRY; DWIGHT F.
STEPHENSON; RONALD B. SMITH,
Defendants-Appellants,

and

DEWBERRY & DAVIS,
Defendant & Third Party Plaintiff-
Appellant,

and

No. 97-1991

JOHN STEVENSON,
Defendant,

v.

GLENN ELLIOTT FUTRELL,
INCORPORATED; LRM INCORPORATED;
ROGERS-BAKERS PROPERTIES,
INCORPORATED; A. GLENN BARWICK
PROPERTIES, INCORPORATED; EASTERN
CAROLINA LAND DEVELOPMENT,
INCORPORATED; BARRY MARTIN
PROPERTIES, INCORPORATED; LAND
CONSULTANTS OF THE SOUTH,
INCORPORATED; MANTEO INVESTMENT
ASSOCIATES, INCORPORATED,
Third Party Defendants.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Elizabeth City.
Terrence W. Boyle, Chief District Judge.
(CA-93-59-2-BO)

2

Argued: May 6, 1998

Decided: November 15, 1999

Before ERVIN,* WILKINS, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert L. O'Donnell, VANDEVENTER, BLACK, MER-
EDITH & MARTIN, L.L.P., Kitty Hawk, North Carolina, for Appel-
lant. William Joseph Carter, CARR, GOODSON, LEE & WARNER,
P.C., Washington, D.C., for Appellees. **ON BRIEF:** Norman W.
Shearin, Jr., VANDEVENTER, BLACK, MEREDITH & MARTIN,
L.L.P., Kitty Hawk, North Carolina; John N. Hutson, Jr., HOWARD,
STALLINGS, STORY, WYCHE, FROM & HUTSON, P.A.,
Raleigh, North Carolina, for Appellant. James F. Lee, Jr., CARR,
GOODSON, LEE & WARNER, P.C., Washington, D.C.; Evelyn M.
Coman, NEWSOM, GRAHAM, HEDRICK & KENNON, P.A., Dur-
ham, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

*Judge Ervin heard oral argument in this case but died prior to the
time the decision was filed. The decision is filed by a quorum of the
panel. 28 U.S.C. § 46(d).

3

**OPINION**

PER CURIAM:

Roanoke Properties Limited Partnership (RPLP) appeals an order of the district court granting judgment as a matter of law, see Fed. R. Civ. P. 50(b), to Dewberry & Davis (Dewberry)**1** in RPLP's contract and tort action against Dewberry. Finding no error, we affirm.**2**

I.

This action arose from the collapse of a bulkhead at the Pirate's Cove Marina in Dare County, North Carolina. Roanoke Properties General Partnership (the General Partnership) began developing Pirate's Cove in the late 1980s. The development contains single- and multi-family residential properties and a marina. In 1988, the General Partnership contracted with Dewberry, a Virginia architectural and engineering firm, to design certain parts of the marina, including the bulkhead. After contracting with Dewberry, the General Partnership, for liability reasons, conveyed the marina to Roanoke Properties Limited (the Corporation), a North Carolina corporation wholly owned by the General Partnership. Subsequent to this conveyance, RPLP succeeded to the interests of the General Partnership.

The Corporation, after becoming the fee-simple owner of the marina, issued a Declaration of Condominium, naming itself as the sole declarant. The Declaration created a "dockominium," to be known as "Pirate's Cove Yacht Club," in which boaters could purchase individual boat slips and own common areas, including the bulkhead, as tenants in common.

_____

**1** Several other entities that were initially parties in this suit are no longer involved in the action.
**2** RPLP also appealed, and Dewberry cross-appealed, rulings of the district court pertaining to the application of a limitation-of-liability clause contained in a contract between the parties. Finally, RPLP appealed an alternative ruling by the district court that Dewberry was entitled to a new trial on damages even if it was not entitled to judgment as a matter of law. Because we affirm the grant of judgment as a matter of law to Dewberry, we need not reach those issues.

4

The Declaration reserved for RPLP certain easements through the marina property for the purpose of allowing RPLP to complete the Pirate's Cove development. It also reserved to RPLP the rights to develop and improve land and properties in Pirate's Cove, to create additional condominium regimes and other planned communities, and to add such regimes to the area governed by the already-existing homeowners' association. The Declaration further provided that the Pirate's Cove Slip Owners' Association (the Slip Owners' Association), an unincorporated association, would be responsible for maintaining the common areas of the dockominium. The Slip Owners' Association also has the right to bring suit on behalf of its members. See N.C. Gen. Stat. § 47C-3-102(a)(4) (Supp. 1998).

In the Pirate's Cove Public Offering Statement, the Corporation, as condominium declarant, warranted that each slip would be substantially completed within 24 months of the signing of a contract for sale. The Statement further provided that RPLP made "no other warranties except those required specifically by Sections 47C-4-114 and 47C-4-115 of the North Carolina Condominium Act," J.A. 1942, and that "[n]o assurances are made as to quality of construction," J.A. 1946.

In 1992, a portion of the marina bulkhead collapsed. RPLP subsequently brought suit[3] against Dewberry seeking damages for breach of contract and negligence,[4] alleging that as a result of Dewberry's substandard design (1) RPLP would need to expend considerable money to repair the bulkhead; (2) the area of the marina would be reduced; and (3) RPLP had lost and would continue to lose income it otherwise would have enjoyed from slip rentals and sales and because of interruptions to its business.

At various times during the trial that followed, the parties and the district court discussed whether RPLP could establish a prima facie case of breach of contract or tort damages because it had transferred

_____

[3] The suit was initiated in Dare County Superior Court and subsequently was removed to federal district court.
[4] Although RPLP also asserted a claim of gross negligence, the district court granted judgment as a matter of law to Dewberry on that claim, and that ruling has not been appealed.

5

ownership of the bulkhead to a separate legal entity prior to the collapse of the bulkhead. At the close of RPLP's evidence, Dewberry moved for judgment as a matter of law on, inter alia, the basis that RPLP had failed to prove ownership of the bulkhead and therefore had failed to prove injury as the result of its collapse. See Fed. R. Civ. P. 50(a). RPLP contended that Dewberry's motion properly should be characterized as a motion to dismiss for failure to prosecute in the name of the real party in interest, see Fed. R. Civ. P. 17, and in response thereto, moved to amend its complaint to join the Corporation and the Slip Owners' Association as plaintiffs. The court denied RPLP's motion but also denied Dewberry's motion for judgment as a matter of law regarding the claim concerning the diminution in value of the marina.**5** The court did, however, grant judgment as a matter of law against RPLP on its other damages theories.

Following the trial, the jury returned a verdict for RPLP on both the breach of contract and the negligence claims, and awarded damages in the amount of $840,585.63. Subsequently, Dewberry renewed its motion for judgment as a matter of law. See Fed. R. Civ. P. 50(b). The district court granted Dewberry's motion on the ground that RPLP had failed to prove that it owned the bulkhead and therefore could not prove that it was injured by its collapse. The court noted that although RPLP had offered during the trial to amend the complaint to join the Corporation and the Slip Owners' Association as plaintiffs, such an amendment was not warranted because "Rule 17 `is intended to prevent forfeiture when ... an understandable mistake has been made,'" and RPLP's decision to name itself as the only plaintiff "was conscious and intentional." J.A. 1803 (quoting Fed. R. Civ. P. 17 advisory committee's note) (alteration in original).

_____

**5** This diminution claim evolved during the course of the trial from RPLP's allegation that it would have to incur expense in repairing the bulkhead and testimony that the diminution in value of the marina as a result of the collapse of the bulkhead was equal to the cost of repairing the bulkhead. At the close of all of the evidence, Dewberry again moved for judgment as a matter of law on this claim, and the court again denied the motion. See Fed. R. Civ. P. 50(a).

6

II.

On appeal, RPLP contends that the district court erred in concluding that it failed to prove that it was injured as a result of the collapse of the bulkhead.**6** Alternatively, RPLP maintains that Dewberry's challenge should be construed as an assertion that RPLP "was not the real party in interest." Opening Brief of Appellant/Cross-Appellee at 19. In this regard, RPLP claims that the district court erred in denying its motion to amend the complaint to add the Corporation and the Slip Owners' Association as plaintiffs, and that in any event, Dewberry waived any objection it otherwise could have made under Rule 17. We address these contentions seriatim.

We review the decision of the district court to grant judgment as a matter of law de novo, viewing the facts in the light most favorable to the nonmoving party. See Konkel v. Bob Evans Farms Inc., 165 F.3d 275, 279 (4th Cir. 1999), cert. denied, 68 U.S.L.W. 3106 (U.S. Oct. 4, 1999) (No. 99-180). We review the grant or denial of a motion to amend the pleadings for abuse of discretion. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 940 (4th Cir. 1995).

A.

To establish a prima facie case of negligence under North Carolina law, the plaintiff must demonstrate that the defendant breached a duty of care owed to the plaintiff and that the breach proximately caused the plaintiff's injury. See Matthieu v. Piedmont Natural Gas Co., 152 S.E.2d 336, 341 (N.C. 1967). To establish a prima facie case of enti-

_____

**6** RPLP also contends that Dewberry, in moving for judgment as a matter of law on the basis that RPLP had failed to produce any evidence that it owned the bulkhead and therefore failed to produce evidence that the collapse of the bulkhead proximately caused it to suffer damages, failed to explain the specific reason why the ownership of the bulkhead was material or controlling on the proximate cause issue. See Fed. R. Civ. P. 50(a)(2) (stating that a motion for judgment as a matter of law "shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment"). We disagree, and believe that Dewberry's explanation was more than adequate.

tlement to damages in a breach of contract action under North Carolina law, a plaintiff must prove that it suffered special damages as a result of a breach of contract. See Reis v. Hoots, 509 S.E.2d 198, 205 (N.C. Ct. App. 1998), review denied, ___ S.E.2d ___ (N.C. June 28, 1999). Thus, under either theory RPLP must prove that it was injured as a result of the collapse of the bulkhead.

Initially, we note that the district court correctly ruled that although Dewberry's substandard design resulted in a significant decrease in the value of the marina, this injury was not suffered by RPLP because RPLP had conveyed the marina to the Corporation prior to the collapse. See Chauncy v. Atlantic Coast Line R.R. , 142 S.E. 327, 328 (N.C. 1928) (recognizing that a plaintiff suing for injury to property may recover only to the extent that his property rights have been impaired); see also 59 Am. Jur. 2d Parties § 32 (stating that "[i]f an injury is done to either real or personal property, the right of action is in the then owner alone"). RPLP maintains that even though it conveyed the property before the bulkhead collapsed, it suffered injury from the collapse because it retained certain easements and other property rights in the Yacht Club. However, evidence of these rights does nothing to aid RPLP's cause in the absence of evidence of how these rights were impaired by the collapse and what damages RPLP suffered as a result of the impairment of those rights.[7]

Apart from its contention that it suffered an injury by virtue of the rights it retains in the marina, RPLP maintains that it produced sufficient evidence that it was injured by the collapse of the bulkhead to avoid judgment as a matter of law because RPLP was "responsible for repairs to be made to the common elements and slips." Opening Brief of Appellant/Cross-Appellee at 16. In support of its position that it was responsible for the repairs, RPLP contends that it warranted in the Pirate's Cove Public Offering Statement that the premises were

_____

[7] RPLP also argues that it "has and will suffer an interruption of its income stream derived from Pirate's Cove resulting in a loss of rents and delay in sales in the Yacht Club as repairs have been and will be made." Opening Brief of Appellant/Cross-Appellee at 16. Of course, this damages claim depends implicitly on the false premise that RPLP owned the slips to rent and sell when the bulkhead collapsed.

8

constructed according to sound engineering and construction standards. We do not agree that RPLP made such a warranty.

The North Carolina Condominium Act provides that "[t]he law relating to implied warranties, including but not limited to, implied warranties that the premises are ... constructed according to sound engineering and construction standards ..., is applicable to the sale of a condominium unit." N.C. Gen. Stat § 47C-4-114 (1987). The Act further provides that a general disclaimer of such warranties is effective, except with respect to purchasers of units "that may be occupied for residential use." N.C. Gen. Stat. § 47C-4-115(b) (1987); see N.C. Gen. Stat. § 47C-4-115(a) (1987). Here, the statement in the Pirate's Cove Public Offering Statement that "[n]o assurances are made as to quality of construction," J.A. 1946, clearly constituted a general disclaimer of the type identified in the Act. It is also apparent that the boat slips at issue may not "be occupied for residential use." Indeed, the Pirate's Cove Yacht Club Rules and Regulations expressly prohibit "[l]iving aboard boats at the marina." J.A. 1908. Accordingly, the disclaimer was effective, and RPLP in fact was not responsible for repairing the bulkhead.

B.

RPLP next contends that the judgment entered against it on the basis that it did not own the damaged property amounted to a dismissal based on a failure to sue in the name of the real party in interest. RPLP further contends that Dewberry waived the issue by failing to timely object under Rule 17.**8**

Rule 17(a) of the Federal Rules of Civil Procedure states in pertinent part that "[e]very action shall be prosecuted in the name of the real party in interest," that a real party in interest may sue in his "own name without joining the party for whose benefit the action is brought," and that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a rea-

_____

**8** Presumably in conjunction with this argument, RPLP argues that it is the only party in privity with Dewberry and therefore that neither the Corporation or the Slip Owners' Association could maintain an action against Dewberry for negligent performance of the contract.

9

sonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest." Fed. R. Civ. P. 17(a). The origin of this rule was permissive in purpose in that it allowed subrogees or assignees to sue in their own names. See Virginia Elec. & Power Co. v. Westinghouse Elec. Corp., 485 F.2d 78, 84 (4th Cir. 1973). That purpose having been served, the primary function of Rule 17 is now negative: "to enable a defendant to present defenses he has against the real party in interest, to protect the defendant against a subsequent action by the party actually entitled to relief, and to ensure that the judgment will have proper res judicata effect." Id.

We disagree with RPLP's characterization of the deficiency in its case as being an issue of the real party in interest. RPLP's protestations notwithstanding, Dewberry did not contend that an entity other than RPLP was the real party in interest, but rather maintained simply that RPLP had failed to establish its prima facie case. We believe that the district court properly assessed the situation when it stated to RPLP's counsel, "It's not that you want to come back twice, it's that you want to stay in once." J.A. 954. Accordingly, whether Dewberry timely raised a real party in interest objection is immaterial.

RPLP also argues that its alleged status as a real party in interest in this litigation relieved it of the requirement of demonstrating that it was injured by the collapse of the bulkhead. We disagree. Even assuming arguendo that RPLP was a real party in interest by virtue of its relationships to the Corporation and the Slip Owners' Association, and therefore that RPLP was entitled to sue on behalf of these entities, RPLP did not do so. Indeed, RPLP's complaint is clear that the claimed injuries on which this action is based are injuries that RPLP itself allegedly has suffered.

Although it is not altogether clear from reading RPLP's brief, RPLP may also contend that, to the extent that the Corporation and the Slip Owners' Association are real parties in interest in this litigation, the district court abused its discretion in refusing to "allow[ ] ... joinder" of those parties prior to granting judgment as a matter of law to Dewberry. Fed. R. Civ. P. 17(a). To the extent that RPLP advances that position, it is incorrect.

10

First, RPLP asserts in its brief that neither the Corporation nor the Slip Owners' Association could have maintained a negligence or contract action against Dewberry because Dewberry breached no duty owed to either of those entities. Accordingly, to the extent that RPLP claims that the court erred in failing to allow joinder of the two other entities, it is not clear what difference RPLP asserts that joinder could have made.

That point aside, the language in Rule 17 allowing a party to cure a real party in interest defect before the case is dismissed for failure to sue in the name of the real party in interest "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Fed. R. Civ. P. 17 advisory committee's note. Here, the district court was well within its discretion in concluding that the decision to have RPLP sue Dewberry was not an "understandable mistake," but rather a purely strategic decision. RPLP was not surprised by the fact that it did not own the bulkhead. Indeed, it would appear that it brought suit itself because it believed that neither the Corporation nor the Slip Owners' Association could maintain a tort or contract action against Dewberry and that bringing suit itself was its best chance for recovery.

Even had RPLP's failure to add the Corporation and the Slip Owners' Association as plaintiffs earlier in the suit been an "understandable mistake," we note that allowing RPLP to amend on the third day of trial would have been extremely prejudicial to Dewberry. Up to that point, Dewberry had had no reason to conduct discovery regarding, or otherwise to investigate, whether it in fact owed these other entities any duties, and if so, whether it breached such duties. See Lone Star, 43 F.3d at 941 (explaining that "a motion to amend may be denied when it has been unduly delayed and when allowing the motion would prejudice the nonmovant"). For all of these reasons, we conclude that the district court did not abuse its discretion in denying RPLP's motion to join the Corporation and the Slip Owners' Association as plaintiffs.

III.

In sum, the deficiencies in RPLP's action transcend mere real party in interest problems. Because we conclude that RPLP failed to pro-

11

duce evidence that it was injured as a result of Dewberry's substandard design, we affirm the judgment as a matter of law in Dewberry's favor.

AFFIRMED

12