CARL STEPHENS, TRADING AND DOING BUSINESS AS SERVICE OIL COMPANY, v. SAM C. CARTER.

(Filed 22 May, 1957.)

**1. Fixtures §§ 1, 3—**

Ordinarily, when a chattel is affixed to the realty, it becomes realty and may thereafter be conveyed only by deed, and whether it becomes a part of the freehold depends upon the understanding or agreement of the parties, express or implied, at the time the chattel is affixed, with the right of removal ordinarily existing only in favor of a tenant in regard to trade fixtures placed upon the land for the better temporary use of the premises for trade or agriculture.

STEPHENS *v.* CARTER.

**2. Same—**

A filling station, which had two storage tanks buried in the ground, was sold by deed containing no reservations. The purchaser sold certain fixtures by parol and thereafter conveyed the realty to defendant by deed containing no reservations. The purchaser of the fixtures thereafter instituted this action to recover the storage tanks. *Held:* The tanks were a part of the realty and could be conveyed only by a written instrument, and the attempt to transfer them by parol was ineffectual, and therefore nonsuit should have been allowed.

APPEAL by defendant from *Williams, J.,* October, 1956 Term, COLUMBUS Superior Court.

Civil action to recover two gasoline tanks of the value of $500.00. The ancillary writ of claim and delivery was issued at the time the action was instituted. The jury found for the plaintiff. From judgment accordingly, the defendant appealed. Facts are discussed in the opinion.

*Powell & Powell for defendant, appellant.*
*Powell, Lee & Lee for plaintiff, appellee.*

HIGGINS, J.   The facts controlling decision in this case are not in dispute. Prior to 1930 George W. Dove erected a filling station on a lot owned by him in the town of Chadbourn. In connection with the filling station the Standard Oil Company installed a 550-gallon storage tank. This tank was buried underground and was attached to a pump used in dispensing gasoline. About the year 1938 Mr. Dove installed a 5,000-gallon tank, also underground and similarly connected with the pumps. The "fill pipes" and the "vent pipes" were exposed above the ground.

In 1941 Mr. Dove sold the lot and filling station to the defendant, Sam Carter, and executed and delivered a fee simple deed therefor. Dove testified without objection: "Both of these tanks remained underground until the time I sold to Sam Carter. I used both of them in connection with the filling station. I considered the tanks a part of the real estate and sold them as a part of the real estate the way I figured. There was no exception made in my deed to Mr. Carter about any tanks or anything else. . . ." Sam Carter sold the filling station and conveyed it by deed on 1 November, 1946, to W. J. Rabon. Carter's deed contained no exceptions.

While Rabon owned the property he sold some of the station equipment to the plaintiff, Carl Stephens. Stephens testified: "I have never owned the filling station. I bought the equipment at the station from Rabon in 1949. I did not get any bill of sale. I just taken the check

which I gave him which called for the equipment. I didn't get any deed from him, no paper writing at all, except the stub on this check that called for equipment. The check and my personal recollection is the only evidence I have got of the transaction. That was February 23, 1949. The tanks were buried in the ground when I purchased them and they continued to be buried until I attempted to move them." The attempt was made about April, 1955.

On 1 November, 1952, the defendant Carter re-purchased the filling station from Rabon and received a deed therefor which contained no exceptions. Rabon testified: ". . . I sold the property, the real estate back to Mr. Sam and there were no exceptions about any gas pumps or tanks because the pumps had been removed and the air compressors. . . . I sold him an air compressor, two pumps, and two tanks in the ground."

Thus it appears there is no dispute over the fact the smaller tank was installed by the Standard Oil Company between 1920 and 1930, while Mr. Dove owned the property. The larger tank was installed by Mr. Dove also while he owned it. So far as the record discloses, neither the Standard Oil Company nor Mr. Dove has ever made any claim to either tank. Both have remained content to let the tanks pass by deed and go with the land.

The case was tried by the plaintiff in the Superior Court and he has sought to sustain the trial here upon the theory the tanks were trade fixtures which could be treated as personalty and removed as such. The rule with respect to the right to remove trade fixtures which have been attached to the land is intended to cover those cases in which a tenant installs such fixtures for use during his occupancy with the understanding, express or implied, that they may be removed. "The general rule is that any erection, even by the tenant, for the better enjoyment of the land becomes part of the land; but if it be purely for the exercise of a trade, or for the mixed purpose of trade and agriculture, it belongs to the tenant, and may be severed during the term, or after its expiration, . . . But until it is parted from the soil, such fixture loses its distinctive character of personalty." *Pemberton v. King*, 13 N.C. 376.

"Whatever things the tenant has a right to remove ought to be removed within the term; for, if the tenant leave the premises without removing them, they then become the property of the reversioner." *Smithwick v. Ellison*, 24 N.C. 326; *Springs v. Refining Co.*, 205 N.C. 444, 171 S.E. 635. "Whether a thing attached to land be a fixture or a chattel personal depends upon the agreement of the parties, express or implied." *Springs v. Refining Co., supra; Feimster v. Johnson*, 64 N.C. 259.

"If the tenant yields possession and leaves the structure standing, this fact may be evidence that it was not used or intended only for the purpose of trade or manufacture, or of abandonment of it, but it could not change the established character of the property.

"The character of the structure, its purpose and the circumstances under which it was erected, the understanding and agreement of the parties at the time the erection was made, must all be considered in determining whether it became a part of the freehold or not." *R. R. v. Deal*, 90 N.C. 110; *Ingold v. Assurance Co.*, 230 N.C. 142, 52 S.E. 2d 366.

"As between landlord and tenant, the intent with which fixtures are attached to the freehold becomes material, and if it appear that they were for the better temporary use of the premises, they may be treated as 'trade fixtures,' and hence removable. *Causey v. Plaid Mills*, 119 N.C. 180, 25 S.E. 863. The liberality extended a tenant, in favor of trade and to encourage industry, may not apply as between vendor and vendee or mortgagor and mortgagee. *Pritchard v. Steamboat Co.*, 169 N.C. 457, 86 S.E. 171; *Overman v. Sasser*, 107 N.C. 432, 12 S.E. 64; *Foote v. Gooch*, 96 N.C. 265, 1 S.E. 525; *Bond v. Coke*, 71 N.C. 97; *Latham v. Blakely*, 70 N.C. 368. The reason for the rigid enforcement of the rule in the one case and its relaxation in the other is clearly pointed out by *Pearson, C. J.*, in *Moore v. Vallentine*, 77 N.C. 188. When fixtures are annexed to the land by the owner, actual or potential, the purpose is to enhance the value of the freehold, and to be permanent. But with the tenant a different purpose is to be served, hence for the encouragement of trade, manufacturing, etc., the tenant is allowed to remove what has apparently become affixed to the land, if affixed for the purposes of trade, and not merely for the better enjoyment of the premises." *Springs v. Refining Co., supra; Basnight v. Small*, 163 N.C. 15, 79 S.E. 269.

"It is a well settled principle of common law that everything which is annexed to the freehold becomes a part of the realty. Although ownership of the land and of the chattel is vested in the same person, or when the owners of both concur in a common purpose, the presumption that a chattel is made a part of the land by being affixed to it may be rebutted, yet the evidence must, as it would seem, be in writing, under the statute of frauds, or else consist of facts and circumstances of a nature to render writing unnecessary, by giving birth to an equity or an equitable estoppel." *Fleishel v. Jessup*, 244 N.C. 451, 94 S.E. 2d 308; *Horne v. Smith*, 105 N.C. 322, 11 S.E. 373; *Bryan v. Lawrence*, 50 N.C. (5 Jones) 337. Equitable estoppel is not involved here.

In the instant case the small tank was affixed to the soil by the Standard Oil Company 30 years ago. No attempt was ever made by Standard to remove or to assign any right to remove. The plaintiff

does not allege this tank was installed with the intent or by agreement, either express or implied, that it ever be removed. The owner himself installed the larger tank 18 years ago. The owner conveyed in 1941 by deed to the defendant. The defendant conveyed by deed to Rabon in 1946. Rabon reconveyed to the defendant in 1951. All the deeds conveyed the fee without any exceptions as to fixtures. Neither Rabon who attempted to convey by parol, nor the plaintiff who attempted to buy by parol, ever occupied the land as tenant. The court attempted to extend to a former owner (Rabon) and to a stranger (the plaintiff) a right to remove a trade fixture which is reserved only to a tenant.

Defendant's assignment of error No. 8 relates to the refusal of the court to grant the motion for nonsuit at the close of all the evidence. The evidence in this case shows the tanks were a part of the realty. They could be conveyed only by a written instrument. The attempt of Rabon to transfer them to the plaintiff by parol was ineffectual. Upon the authority of the cases heretofore cited, we conclude that the defendant's assignment of error No. 8 must be sustained. The motion for nonsuit should have been allowed.

Reversed.