LEE-MOORE OIL COMPANY v. TERRANCE V. CLEARY AND WIFE, LYNN L. CLEARY

No. 63

(Filed 14 July 1978)

1. **Property § 1; Fixtures § 1— chattel affixed to another's realty—agreement that it remain the personal property of owner—subsequent purchasers**

    An understanding between the owner of a chattel who affixes it to the land of another and the owner of the land to which it is affixed that the chattel shall remain the personal property of its original owner is binding on subsequent purchasers of the land who take with notice, actual or constructive, of the understanding.

2. **Property § 1; Fixtures § 1— chattel affixed to another's realty—oral agreement as to ownership**

    An agreement between the owner of a chattel and the owner of the realty upon which the chattel is affixed that the chattel shall remain the personal property of the original owner need not be in writing and may be either express or implied.

3. **Property § 1; Fixtures § 1— gasoline dispensing equipment—personalty of original owner**

    In an action to recover damages for conversion of gasoline dispensing equipment placed by plaintiff on realty which was owned by another and subsequently purchased by defendants, plaintiff's evidence was sufficient to permit the jury to find that the equipment was personal property belonging to the plaintiff where it tended to show (1) an agreement between plaintiff and

the owner of the realty at the time of installation that the equipment, even if affixed to the realty, was to remain the personal property of plaintiff, and (2) defendants had knowledge of such agreement at the time they purchased the realty.

ON petition for discretionary review of a decision of the Court of Appeals, 33 N.C. App. 212, 234 S.E. 2d 456 (1977), reversing judgment entered by *Pridgen, J.,* at the 2 April 1976 Session of LEE County District Court. Docketed and argued as No. 55 at the Fall Term 1977.

*Harrington & Shaw by Gerald E. Shaw, Attorneys for plaintiff appellee.*

*Ray F. Swain, Attorney for defendant appellants.*

EXUM, Justice.

This is a civil action for damages for conversion. Plaintiff claims that it is the owner of certain gasoline dispensing equipment—two gasoline pumps, one 3000-gallon gasoline storage tank, one 1000-gallon gasoline storage tank, and a one-half horsepower air compressor—located on defendants' real property consisting essentially of a grocery store and service station known as "Marley's Store." Defendants claim these items are fixtures, title to which passed to them when they purchased the realty on which the items are located. At the close of plaintiff's evidence the trial judge allowed defendants' motion for a directed verdict on the ground that "plaintiff's evidence itself showed that the equipment was attached to the real property and that the real property was conveyed to the defendant without reservation of any part of the real property." The Court of Appeals reversed and, as we understand its mandate, remanded the case for trial on all issues.[1] We affirm.

The basic question before us is whether plaintiff's evidence is sufficient to survive defendants' motion for directed verdict. This involves consideration of whether the evidence is sufficient to

---

1. While the language of the mandate might be interpreted to mean that the case is remanded only for trial on the damages issue, both parties agree that if remanded at all it should be for trial on all issues since defendants have had no opportunity to offer evidence.

Oil Co. v. Cleary

permit a jury to find that the equipment in question is personal property belonging to the plaintff.[2] We think the evidence is sufficient.

The theory of plaintiff's action as revealed by its complaint filed in July, 1975, is that its equipment was installed by plaintiff under an oral agreement with the then owner and operator of the premises, that the equipment would remain the property of plaintiff but would be left on the premises "so long as the operator of Marley's Store purchased gasoline solely from the plaintiff." Marley and succeeding owners of the store complied with this agreement by purchasing gasoline solely from plaintiff. Defendants acquired the real property by deed recorded 28 May 1975 and elected to purchase gasoline from a source other than plaintiff. Plaintiff offered to remove its equipment and restore the real property to its original condition at its own expense or to sell the equipment to defendants at less than market value. Defendants have refused to purchase or surrender the equipment and have refused to permit plaintiff to go upon the premises to remove it. Plaintiff prays judgment for $1668.00 damages, which it says represents the fair market value of the equipment.

Defendants answered, admitting their refusal to permit plaintiff to remove the equipment but otherwise denying the material allegations of the complaint. Defendants allege affirmatively that at the time of their purchase of the real property this equipment was "firmly affixed" thereto and was "a part of the real property," that defendants had no notice of plaintiff's claim to it, and that any oral agreement with reference to the equipment is unenforceable under the statute of frauds. Defendant Terrance Cleary asserted a counterclaim against plaintiff for "wrongful interference with [his] right to carry on his lawful business."[3]

[1] "As a general rule, whatever is attached to the land is understood to be a part of the realty; but as this depends, to some extent, upon circumstances, the rights involved must always be subject to explanation by evidence. Whether a thing attached to the land be a fixture or chattel personal, depends upon the agreement of the parties, express or implied. (Citations omit-

2. Defendants do not contest on this appeal the sufficiency of plaintiff's evidence to show a conversion, assuming the property is plaintiff's personalty. Defendants seem to concede this much in their pleadings when they admit their refusal to permit plaintiff to remove the equipment. Neither the parties nor we have addressed this aspect of the case.

3. Terrance Cleary, however, took a voluntary dismissal of his counterclaim after the directed verdict against plaintiff was entered. This claim is not now before us.

ted.) A building, or other fixture which is ordinarily a part of the realty, is held to be personal property when placed on the land of another by contract or consent of the owner." *Feimster v. Johnson*, 64 N.C. 259, 260-61 (1870), quoted with approval in *Stephens v. Carter*, 246 N.C. 318, 98 S.E. 2d 311 (1957), and *Springs v. Refining Company*, 205 N.C. 444, 171 S.E. 635 (1933). A general statement of the law in this area is found in R. Brown, The Law of Personal Property 567 (3d ed. 1975) (footnotes omitted):

> "For present purposes, a licensee is one who is given a simple permission to erect buildings or make other improvements on the land of another, but is not granted any estate or term of years in the land. . . . Such licensees are given unusually favorable consideration in the United States. Buildings or other improvements erected by the licensee not only do not become the property of the landowner, but remain the personal property of the tenant, and are not forfeited to the landowner if not removed when the license is revoked, or where the licensee dies. The licensee may dispose of his improvements as his personal chattels, and as to them the forms of action relating to personal property are applicable. Since the landowner's consent that the licensee may erect the improvements on the land, and may remove them, creates no estate or interest in the land, such agreements may be oral and need not be in writing under the statute of frauds. Moreover, if consent is given to the placing of the fixtures on the land, then, without more, there is implied the consent that the licensee may remove them."

Such an understanding between the original owner of the personalty who affixes it to the land of another and the owner of land to which it is affixed is binding on subsequent purchasers of the land who take with notice, actual or constructive, of the understanding. *Railroad v. Deal*, 90 N.C. 110 (1884); *Hankins v. Luebker*, 224 Ark. 425, 274 S.W. 2d 356 (1955); *Workman v. Henrie*, 71 Utah 400, 266 P. 1033, 58 A.L.R. 1346 (1928); Annot., 58 A.L.R. 1352, 1357-59 (1929); R. Brown, *supra* § 16.16; *see also Causey v. Plaid Mills*, 119 N.C. 180, 25 S.E. 863 (1896).[4]

---

4. The case relied on by the Court of Appeals, *Standard Oil Co. of New York v. Dolgin*, 95 Vt. 414, 115 Atl. 235 (1921), seems to say that such an understanding between the original annexors would be binding even on an innocent subsequent purchaser. We need not take the rule so far in this case; for, as we shall show, the plaintiff's evidence tends to show that defendants had notice of plaintiff's claim to this equipment before they purchased.

In *Railroad v. Deal, supra*, the plaintiff, Western North Carolina Railroad, took possession of certain realty "under its charter and the verbal license of the defendant's ancestor." While in possession but apparently with no estate or leasehold interest in the land, the Railroad erected a depot on the land near its tracks. Thereafter the Railroad changed the location of its tracks and abandoned the depot. Two years later the defendant, who had acquired the realty "one-half by descent and the other half by purchase," took possession of the depot. The Railroad brought suit to replevy the depot. The defense was that it was a fixture. This Court held for the plaintiff, summarizing its decision, 90 N.C. at 115:

> "The house in question was not intended at the time it was built to become part of, or for the benefit of the land on which it was erected. It was erected by the plaintiff with a knowledge and assent of the ancestor of defendant, for the sole purpose of carrying on its business or trade. It is, therefore, personal property. No legal presumption of relinquishment or abandonment of the right to remove it, to the defendant, arises. The plaintiff is, therefore, entitled to have and remove it as it may see fit to do."

The Court also considered the defendant to have had notice of the understanding with which the depot was erected. It said the fact that the depot "was not intended to aid in the enjoyment of freehold, or to be . . . advantageous to the person entitled to the reversion or the inheritance" must have been plain "to everybody acquainted with the facts." 90 N.C. at 114.

[2]  It is clear from the above authorities that an agreement between the owner of a chattel and the owner of the realty upon which the chattel is affixed, that the chattel shall remain the personal property of the owner, need not be in writing. Such an agreement may be "express or implied." *Feimster v. Johnson, supra.* The cases relied on by defendants for the proposition that such agreements must be in writing to be enforceable, *Fleishel v. Jessup*, 244 N.C. 451, 94 S.E. 2d 308 (1956) and *Horne v. Smith*, 105 N.C. 322, 11 S.E. 373 (1890), do not so hold. Both cases dealt with a situation where the owner of the realty installed certain manufacturing equipment thereon. In *Fleishel* the equipment was a planing mill, boilers, dry kilns and related equipment. In *Horne*

it was an engine, a boiler and a saw mill. In both cases the owners subsequently conveyed the real property. The question then arose whether these items were personalty or realty in the hands of the subsequent purchasers. The Court in *Horne* said, 105 N.C. at 324, 11 S.E. at 374:

> " 'It is a well settled principle of common law that everything which is annexed to the freehold becomes part of the realty. Although, when the ownership of the land and of the chattel is vested in the same person, or when the owners of both concur in a common purpose, the presumption that a chattel is made part of the land by being affixed to it may be rebutted, yet the evidence must, as it would seem, be in writing, under the statute of frauds, or else consist of facts and circumstances of a nature to render a writing unnecessary, by giving birth to an equity or an equitable estoppel.' "

In *Fleishel* the Court said, 244 N.C. at 455, 94 S.E. 2d at 311:

> "Nevertheless, if at the time of the purchase and sale the parties agree that the property or parts thereof affixed to the soil should be considered personal property, then under such circumstance the intent of the parties would prevail. However this intent could only be shown by writing."

In both *Fleishel* and *Horne* the Court was concerned with the rights arising between a vendor of real property who himself had affixed *his own* personalty thereto and the vendee of that property. The requirement of a writing was considered vis-a-vis the vendor's intent when he made the deed. Here we are concerned with the rights arising between the original owner of the personalty, who has no interest in the real property to which it was affixed, and a subsequent vendee of the owner of the realty. Dealings regarding personalty between the owner of the personalty and the owner of the realty, and knowledge thereof on the part of a subsequent purchaser of the realty, may be shown by parol.

In *Causey v. Plaid Mills, supra,* 119 N.C. 180, 25 S.E. 863, the action was for recovery of a certain "inspecting machine" and damages for its wrongful detention by defendant corporation. The defendant claimed the machine was a fixture and passed with the realty when defendant purchased it from a predecessor corporation which had dealt with the plaintiff when the machine was in-

stalled. Plaintiff claimed that he put the machine on the premises with a view to selling it to defendant's predecessor in title, if satisfactory, or, if not, plaintiff could remove it. Plaintiff claimed also that defendant had notice of his claim when defendant purchased the realty. At trial plaintiff offered parol evidence to show the understanding with which he installed the machine. The trial court excluded this evidence. On appeal, this Court held the evidence should have been admitted and awarded plaintiff a new trial because of its exclusion.

*Stephens v. Carter, supra,* 246 N.C. 318, 98 S.E. 2d 311 (1957), relied on by both plaintiff and defendants, was correctly distinguished by the Court of Appeals. There two gasoline storage tanks were installed underground at a filling station, one by Standard Oil Company and one by Dove, the owner of the station. The station was conveyed to Carter, then to Rabon, and then reconveyed to Carter. None of the deeds excepted the underground tanks. While Rabon owned the station he orally agreed to sell Stephens an air compressor, two gasoline pumps and the underground storage tanks. After the station was reconveyed to Carter, Stephens, who had already removed the pumps and the air compressor, sued to recover the tanks. On appeal this Court held that defendant's motion for nonsuit should have been allowed because the evidence showed the tanks to be part of the real property and not subject to transfer by oral agreement. The Court stated, 246 N.C. at 321-22, 98 S.E. 2d at 313:

> "In the instant case the small tank was affixed to the soil by the Standard Oil Company 30 years ago. No attempt was ever made by Standard to remove or to assign any right to remove. *The plaintiff does not allege this tank was installed with the intent or by agreement, either express or implied, that it ever be removed.* The owner himself installed the larger tank 18 years ago. . . . Neither Rabon who attempted to convey by parol, nor the plaintiff who attempted to buy by parol, ever occupied the land as tenant. The court attempted to extend to a former owner (Rabon) and to a stranger (the plaintiff) a right to remove a trade fixture which is reserved only to a tenant." (Emphasis supplied.)

Again, the rights asserted in *Stephens* were those arising between a subsequent owner of the realty and a purported pur-

chaser of the alleged personalty from a previous owner. The Court found significant the absence of any contention by the plaintiff that the small tank was installed under an express or implied agreement that it could be removed and the fact that Standard Oil, which installed the tank, had never asserted any right to remove it. It said, 246 N.C. at 320, 98 S.E. 2d at 312:

> "So far as the record discloses, neither the Standard Oil Company nor Mr. Dove has ever made any claim to either tank. Both have remained content to let the tanks pass by deed and go with the land."

[3] The questions, then, under the foregoing principles, are whether plaintiff has offered evidence sufficient to show (1) an understanding, express or implied, between it and the owner of the realty at the time of the installation that the equipment, even if affixed to the realty, was to remain the personal property of plaintiff and (2) defendant had knowledge of such an understanding at the time he purchased the real property. We think the evidence was sufficient.

Plaintiff's evidence tends to show that prior to March, 1969, P&N Oil Company claimed ownership of two 1000-gallon fuel storage tanks, two gasoline pumps and an air compressor on the premises of the grocery store and service station then owned and operated by Junius Marley. On 1 March 1969 P&N Oil Company merged with L. and M. Oil Company to form plaintiff Lee-Moore Oil Company, which retained assets of each predecessor company including the equipment at Marley's Store. Shortly thereafter plaintiff removed the gasoline pumps and the air compressor and installed a new 3000-gallon storage tank, two new pumps, and a new air compressor.[5] Truby Proctor, Jr., presently Secretary-Treasurer of plaintiff and an employee since about 1954, testified concerning the circumstances surrounding the installation of this new equipment, as summarized in the record:

> "When Mr. Proctor saw Mr. Marley in late January or early February of 1969, Mr. Marley was about to change

---

5. The record is not clear whether one of the old 1000-gallon storage tanks was removed and replaced by the new 3000-gallon tank. Apparently the old tank was removed since plaintiff's action is for damages arising from the alleged conversion of only two storage tanks.

gasoline companies or suppliers because Lee-Moore was letting him run out and Mr. Proctor went up to see him late one afternoon.

"Mr. Proctor had a conversation with Mr. Marley and as a result of his conversation with Mr. Marley, Lee-Moore Oil Company bought a 3000 gallon tank and had it delivered to Marley's property. Lee-Moore Oil Company bought a 3000 gallon tank and had it delivered to Marley's property and bought two new pumps to replace the two Lee-Moore Oil Company had there. Lee-Moore Oil Company put in the 3000 gallon tank to replace one of the 1000 gallon tanks which Lee-Moore Oil Company owned there. Mr. Proctor talked to Mr. Marley about a five year contract. Two new pumps and a new air compressor were placed on the premises at Marley's and Lee-Moore picked up the two old pumps and the old air compressor which Lee-Moore owned and the tanks were in the ground.

"Lee-Moore Oil Company continued to supply gasoline to Mr. Marley at Lee-Moore Oil Company's dealer tank wagon price. There is an established dealer tank wagon price for gasoline that Lee-Moore Oil Company sells. Lee-Moore has three different deals for supplying gasoline. One is when Lee-Moore owns the equipment and the operator owns the land and building. Lee-Moore bills all that gasoline at dealer tank wagon price. Lee-Moore has another deal where the operator owns the equipment, the land and building. Lee-Moore bills that gasoline at dealer tank wagon less the discount anywhere from one to two cents a gallon off the dealer tank wagon price. Lee-Moore has a third deal where Lee-Moore owns the property and also the equipment and has gasoline in the tanks and pays the dealer a commission.

"Mr. Marley was on a dealer tank wagon price, no discount. This price is offered to accounts where Lee-Moore owns the gasoline equipment. Lee-Moore furnishes the gasoline equipment, installs it and maintains it. Lee-Moore sells gasoline to those accounts at dealer tank wagon. That would be an account where the operator owns buildings and land."

Plaintiff's evidence further tends to show that none of the equipment in question was ever sold to Marley and that plaintiff continued to claim ownership of it, as was its custom when "pumps, tanks and other equipment are supplied to the independent service station operators."

According to the testimony of Henry Kimbrell, defendants' grantor, he was the half-brother of Junius Marley, who died 29 December 1972. Title to the station then passed to Kimbrell. Kimbrell operated the station for about two and one-half years. During this time plaintiff regularly delivered gasoline to the station and had possession of keys which operated locks on the pumps. Kimbrell did not have a key to the pumps and never claimed ownership of the gasoline dispensing equipment.

On 15 May 1975 Kimbrell and defendant Terrance Cleary executed a written contract whereby Kimbrell agreed to sell the service station property, reserving only the right to take water from a well on the premises. Thereafter Kimbrell conveyed the property to both defendants by warranty deed dated 20 May 1975. Sometime before these transactions, however, Kimbrell informed defendant Terrance Cleary orally that the gasoline dispensing equipment belonged to Lee-Moore Oil Company.

In May or June of 1975 plaintiff's operations manager Paul White and defendant Terrance Cleary were unable to reach agreement on the price of gasoline. Accordingly, "Cleary said if Lee-Moore Oil Company could not sell him gasoline that he could make money out of, that Lee-Moore Oil Company would just have to take its equipment out, to which Mr. White agreed." Ben Wimberly, an employee of plaintiff, then went to the service station and informed defendant he was there to pick up the equipment, but defendant refused to let him do so. About this time plaintiff and defendant also discussed a sale of the equipment, but it does not appear that any agreement was reached.

Allowing plaintiff every reasonable inference that may be drawn from this evidence, *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1977); *Anderson v. Butler*, 284 N.C. 723, 202 S.E. 2d 585 (1974), we hold it sufficient to show an agreement between plaintiff and Junius Marley that the tanks, pumps and air compressor were to remain plaintiff's personal property notwithstanding affixation to the realty. It also appears that defendants knew of this understanding at the time they purchased the

store from Kimbrell. The trial court therefore erred in allowing defendants' motion for directed verdict. The decision of the Court of Appeals reversing the judgment of the trial court is accordingly affirmed, and the case remanded for trial on all issues.

Affirmed.