C. EVERETTE LEWIS v. LEWIS NURSERY, INC. AND AMERICAN FOODS, INC.

No. 855DC629

(Filed 15 April 1986)

1. Agriculture § 7— term of lease—issue of fact—summary judgment improper

The trial court erred in entering summary judgment for plaintiff landlord in a declaratory judgment action to determine ownership in the proceeds realized from the harvest and sale of strawberry plants grown on the leased land where there was an issue of fact as to whether the lease was intended to run for one year, thus triggering the application of N.C.G.S. § 42-23, or for less than one year.

**2. Agriculture § 7— term of lease—right to emblements**

If the parties' lease was for less than one year, the tenancy would be an estate for years automatically terminating on 31 December 1978 without need for notice, and defendant who was holding over would thereafter be a tenant at sufferance not entitled to emblements, since there is no right or privilege granted by law entitling a holdover tenant to gather the annual yield of land resulting from one's labor after the expiration of a fixed tenancy unless the landlord recognizes the tenancy for an additional period.

**3. Agriculture § 7— term of lease—notice of termination—extension of lease— right to proceeds from sale of crop**

If the parties' lease was for one year, N.C.G.S. § 42-23 applied requiring that one month's notice to quit be given, and failure to give notice would result in extension of the tenancy for another period, thus entitling defendant, as tenant and owner of strawberry plants on the leased land, to proceeds realized from their harvest and sale during the extension.

**4. Waiver § 2— ownership of crops—statement not waiver of claim**

In a declaratory judgment action to determine ownership in the proceeds realized from the harvest and sale of strawberry plants after expiration of the parties' lease, plaintiff's statements at his deposition that he claimed no ownership interest in the plants did not amount to a waiver of his right to the proceeds from their sale.

**5. Agriculture § 7; Landlord and Tenant § 7; Fixtures § 2— strawberry plants— no trade fixtures**

Where defendant contended that it was entitled to remove strawberry plants as trade fixtures even after the end of its tenancy, the trial court did not err in concluding as a matter of law that the plants were not trade fixtures, since trade fixtures are items of personal property affixed to the leasehold which are necessary for or beneficial to the operation of a trade or business on the property, but the plants in question were annual yield in the nature of crops, to be gathered in a single season.

APPEAL by defendant from *Tucker, Judge.* Order entered 11 March 1985 in District Court, PENDER County. Heard in the Court of Appeals 21 November 1985.

*R. V. Biberstein, Jr., for plaintiff appellee.*

*Poyner, Geraghty, Hartsfield & Townsend, by Cecil W. Harrison, Jr., for defendant appellant.*

BECTON, Judge.

In this declaratory judgment action, plaintiff C. Everette Lewis (Lewis) and defendant Lewis Nursery, Inc. (Nursery) both claim ownership of funds held in an escrow account. The funds

are the proceeds realized from the harvest and sale of strawberry plants grown on twelve acres in Pender County, North Carolina. Both parties filed motions for summary judgment. The trial court granted summary judgment in favor of plaintiff Lewis, and defendant Nursery appeals. We reverse and remand in part and affirm in part.

I

The material facts are not in dispute. Lewis owns a twelve-acre tract of land in Pender County. On 8 February 1978, Lewis leased the property to American Foods, Inc. (American) "for Ninety Dollars ($90.00) per acre for the 1978 calendar year." American had been using and cultivating the property before the lease was executed. Lewis knew American would be growing strawberry plants, removing them during their dormant season, and reselling them to nurseries. The dormant season in Pender County usually occurred between December and February, depending on weather conditions. In the 1978-79 growing season, the strawberry plants were dormant and ready for harvesting from late December 1978 through January 1979.

In July 1978, American sold and assigned its leasehold in Lewis' tract of land to defendant Nursery. Defendant Nursery received no actual notice that its leasehold would terminate at the end of the year or that Lewis would not allow Nursery to complete the harvest after 31 December 1978. On 31 December 1978, nearly all the plants on the twelve-acre tract remained in the ground.

On 3 January 1979, Lewis notified Nursery that its lease had expired on 31 December 1978 and that further harvesting should not take place until proper arrangements were made. Arrangements were made in the form of an escrow agreement which allowed Nursery to harvest the strawberry plants, sell them, and deposit the proceeds in an escrow fund. According to the agreement, Nursery was to be paid for harvesting and selling the plants. The plants were harvested between 24 February and 9 April 1979.

At the hearing on the motions for summary judgment, the trial court concluded as a matter of law that the lease created an estate for years; that the tenant had no right to emblements; that

G.S. Sec. 42-23 did not apply in this case; that the plants were not "trade fixtures"; that the plants became the property of the landlord on 31 December 1978; and that Lewis was entitled to the proceeds in escrow. The court then ordered the escrow agent to pay over the funds to plaintiff Lewis.

Defendant Nursery contends the trial court erred in granting plaintiff Lewis' motion for summary judgment and denying Nursery's motion for summary judgment for three reasons: (1) the lease is an agricultural lease governed by N.C. Gen. Stat. Sec. 42-23 (1984) which requires one month's notice before terminating the tenancy; (2) Lewis waived any ownership rights he might have had; and (3) the strawberry plants were trade fixtures which Nursery was entitled to remove upon termination of its tenancy. We reverse the judgment on the first issue and remand the case for the jury to determine whether the lease was for one year. We affirm on all other issues.

## II

[1] Defendant Nursery first contends that G.S. Sec. 42-23 applies to the lease in the case at bar. This statute provides:

> All agricultural leases and contracts hereafter made between landlord and tenant for a period of one year or from year to year, whether such tenant pay a specified rental or share in the crops grown, such year shall be from December first to December first, and such period of time shall constitute a year for agricultural tenancies in lieu of the law and custom heretofore prevailing, namely from January first to January first. In all cases of such tenancies a notice to quit of one month as provided in G.S. 42-14 shall be applicable. If on account of illness or any other good cause, the tenant is unable to harvest all the crops grown on lands leased by him for any year prior to the termination of his lease contract on December first, he shall have a right to return to the premises vacated by him at any time prior to December thirty-first of said year, for the purpose only of harvesting and dividing the remaining crops so ungathered. But he shall have no right to use the houses or outbuildings or that part of the lands from which the crops have been harvested prior to the termination of the tenant year, as defined in this section.

Lewis v. Lewis Nursery, Inc.

> This section shall only apply to the counties of . . .
> Pender . . . .

Although this statute contains some ambiguities, we agree with defendant Nursery that for a lease to fall within the statute it must be both (1) for an agricultural purpose, and (2) "for a period of one year or from year to year."

Plaintiff Lewis filed a Complaint which provided in Paragraph 4: "On or about February 15, 1978, the Plaintiff leased to American Foods, Inc., these 12 acres of land for the 1978 calendar year." This was admitted in defendant's Answer. This statement is susceptible to two interpretations: either the parties intended the lease (1) to be for the entire 1978 year, but they executed the lease in February, or (2) to run from mid-February 1978 to the end of the 1978 calendar year. In either case, the term was for a definite period; therefore, it created an estate for years. *See Davis v. McRee*, 299 N.C. 498, 503, 263 S.E. 2d 604, 607 (1980). And there is no dispute that, according to the lease, the termination date was 31 December 1978. The issue is whether the lease was intended to run for one year, thus triggering the application of G.S. Sec. 42-23, or for less than one year. The trial court concluded as a matter of law that "the lease was for a period of less than one year." Accordingly, the court concluded that G.S. Sec. 42-23 did not apply and entered summary judgment. This was improper.

Summary judgment should not be entered unless there are no genuine issues of material fact for the jury to resolve and it appears the movant is entitled to judgment as a matter of law. *Wiggins v. City of Monroe*, 73 N.C. App. 44, 326 S.E. 2d 39 (1985). In the case at bar, the trial court's conclusion that the lease ran for less than one year is not compelled by the evidence. A jury may reasonably conclude that the agricultural lease[1] was intended to run for the *entire* 1978 calendar year. *Cf. Davis*, 299 N.C. at 503, 263 S.E. 2d at 607 ("The parties to a lease may provide that the commencement of the lease term operate retrospectively." (Citation omitted.)). There is evidence to support a finding that

---

1. We reject as specious Lewis' argument that a lease cannot be an agricultural lease unless the document itself explicitly states as much.

the parties simply delayed the execution of the lease.[2] Lewis testified in his deposition that the lease was originally intended to "run for one year." This is a genuine issue of material fact. Therefore, the judgment is vacated, and the case is remanded for the court to submit this issue to the jury.

[2] If the jury finds that the lease was for less than one year, G.S. Sec. 42-23 will not apply. The tenancy would be an estate for years, automatically terminating on 31 December 1978 without need for notice. *See Midimis v. Murrell*, 189 N.C. 740, 128 S.E. 150 (1925). Thereafter, Nursery would have been holding over and would have remained a tenant at sufferance until Lewis elected to treat Nursery as a trespasser or to recognize it as a tenant from year to year. *See Coulter v. Capital Finance Co.*, 266 N.C. 214, 146 S.E. 2d 97 (1966); *Kearney v. Hare*, 265 N.C. 570, 144 S.E. 2d 636 (1965).

It is clear from the evidence that Lewis chose to dispossess Nursery rather than recognize a new term: Lewis did not accept rent for a new term and gave Nursery notice of eviction on 3 January 1979, three days after the tenancy expired. *See Kearney; Webster's Real Estate Law in North Carolina* Sec. 87 (P. Hetrick rev. ed. 1981); *see also Simmons v. Jarman*, 122 N.C. 195, 29 S.E. 332 (1898). *See generally* 49 Am. Jur. 2d *Landlord and Tenant* Secs. 1143-45 (1970). And because we conclude in Part IV, *infra*, that the strawberry plants were in the nature of crops and were not trade fixtures, Nursery would have no right to the proceeds from the sale of the plants. A tenant at sufferance, who holds over after a tenancy for years, is not entitled to emblements; that is, there is no right or privilege granted by law entitling a hold-over tenant to gather the annual yield of land resulting from one's labor after the expiration of a fixed tenancy unless the landlord recognizes the tenancy for an additional period. *Sanders v. Ellington*, 77 N.C. 255, 258 (1877); *Webster's, supra*, Secs. 81, 107; *cf. Webster's, supra*, Secs. 92, 103 (When the termination date of the tenancy is not known to the tenant, for example in a tenancy from year to year or in a tenancy at will, then the tenant has a right to emblements.).

---

2. To the extent that the court below engaged in contract interpretation, it should have resolved ambiguities in favor of the lessee, especially when, as here, the lessee had no part in preparing the lease document. *Coulter v. Capital Finance Co.*, 266 N.C. 214, 220, 146 S.E. 2d 97, 101-02 (1966).

[3]   If the jury finds that the lease was for one year, the trial court must apply G.S. Sec. 42-23. This statute requires that notice to quit be given, in accordance with G.S. Sec. 42-14, one month before the expiration of the tenancy, even if the tenancy is an estate for years.[3] Because the statute prescribes 1 December as the expiration of the lease year, notice must be given by the preceding 1 November. The evidence shows that notice was not given by Lewis until 3 January 1979.

Generally, the effect of failure to provide notice when it is required under G.S. Sec. 42-14 is that the parties are bound to a new term. *See Simmons; Webster's, supra,* Sec. 97. This rule was designed for periodic tenancies; in the absence of notice to the contrary, the law implies the parties' intent to extend the tenancy for another period. We believe the legislature intended to apply the same presumption to agricultural tenancies, even those for fixed one-year terms, under G.S. Sec. 42-23. First, it is reasonable to presume that in all agricultural tenancies a hold-over tenant intends to remain on the land for another full year to harvest a crop. And a landlord who fails to notify an agricultural tenant to quit the premises at the end of a season should expect the tenant to remain for another year. Second, to rule otherwise would render the notice requirement in G.S. Sec. 42-23 meaningless in the case of a fixed one-year term; failure to give notice as required by the legislature would have no effect, because the tendency for one year would terminate automatically, leaving the tenant at sufferance no right to emblements or other remedies.

Therefore, if G.S. Sec. 42-23 applies, the parties would be bound to a new one-year term. Nursery, as the tenant and owner of the strawberry plants, would be entitled to the escrow proceeds, but it would also be liable for rent to Lewis.

III

[4]   Defendant Nursery next argues that Lewis waived his right to the escrow funds when he stated several times at his deposition that he claimed no ownership interest in the strawberry plants. A careful reading of the deposition, however, reveals that

---

3. We recognize that notice is not usually required for an estate for years because the tenancy ends on a specific predetermined date. Perhaps the legislature intended to provide additional protection for agricultural lessees by requiring notice of one month in all annual leases.

Lewis did not intentionally waive his legal right. The statements quoted by defendant Nursery were responses to questions posed by defendant's attorney, and they related to whether Lewis had any direct claim to the strawberry plants prior to the expiration of the lease. Later in his deposition, Lewis explained his position:

Q. But after the expiration of the lease what was your position?

A. It was my land and anything remaining on it at the time was mine.

Q. And does that explain this lawsuit?

A. Yes.

"A waiver is a voluntary and intentional relinquishment of a known right or benefit. It is usually a question of intent." *Adder v. Holman & Moody, Inc.*, 288 N.C. 484, 492, 219 S.E. 2d 190, 195 (1975) (citation omitted). The plaintiff in the case at bar did not waive his right to the escrow funds.

## IV

[5] Defendant Nursery's final argument is that the trial court erred in concluding as a matter of law that the strawberry plants were not trade fixtures. Defendant contends it was entitled to remove the plants as trade fixtures even after the end of its tenancy. *See Ilderton Oil Co. v. Riggs*, 13 N.C. App. 547, 186 S.E. 2d 691 (1972). Plaintiff Lewis contends, and we agree, that the strawberry plants were "end products" in the nature of crops, not trade fixtures. Therefore, the doctrine of emblements will apply if the jury on remand finds that the lease was for less than one year. *See* Part II, *supra*.

Trade fixtures are items of personal property affixed to the leasehold that are necessary for or beneficial to the operation of a trade or business on the property. *See Stephens v. Carter*, 246 N.C. 318, 98 S.E. 2d 311 (1957) (Gasoline storage tanks were trade fixtures at a service station.). Defendant relies on the annotation at 125 A.L.R. 1406 (1940) and cases cited therein for the proposition that plants grown for nursery purposes are distinguishable from crops, and should be regarded as trade fixtures. But the defendant uses language from the annotation out of context. The annotation discusses the ancient rule that things growing or af-

fixed to land become part of the realty. The exceptions estab-
lished by case law are noted in order to demonstrate the relaxa-
tion of this rule when a tenant grows things as part of a business
or builds a greenhouse or similar structure. These items do not
become part of the realty. Rather, they are considered personal
property. 125 A.L.R. at 1411. The cases discussed in the annota-
tion and cited by defendant considered whether nursery stock
becomes part of the landlord's realty or remains the personal
property of the tenant in various situations. Courts used a legal
fiction—that the plants were "severed" from the realty—in order
to allow the tenant to sue for wrongful conversion of the tenant's
growing nursery stock or to protect the tenant from liens ex-
ecuted on the realty of the landlord. But the decision to treat
nursery stock as personal property was not intended to alter the
rule of emblements—that annual yield must be removed before
the end of the tenancy—and nursery stock generally was treated
in the same way as crops. *See* 125 A.L.R. at 1412-13. The concept
of "trade fixtures" was used by way of analogy to enable tenants
to remove structures such as greenhouses, when they were used
for a trade or business, even though a greenhouse built onto a
personal residence for private enjoyment became part of the land
and could not be removed.

It is sometimes important to distinguish between plants that
are part of realty and plants that are considered personalty. *See
generally* 63A Am. Jur. 2d *Property* Sec. 19 (1984) (whether
nursery stock is part of realty or personal property). This deter-
mination depends on the facts of each case. *Springs v. Atlantic
Refining Co.*, 205 N.C. 444, 450, 171 S.E. 635, 638 (1933). Whether
the parties intended that the tenant would remove the item upon
the expiration of the lease is one important factor. *See Western
North Carolina Railroad v. Deal*, 90 N.C. 110 (1884). But in the
case at bar, the inquiry is not whether the items were realty or
personalty; the parties agree that the strawberry plants were
personalty which the tenant was expected to remove. The issue is
whether they are more like "crops" or more like "trade fixtures."
In this regard, the annotation quoted above discusses a helpful
opinion:

> Attention is called to certain cases distinguishing
> nursery stock from "crops" or similar products of the soil
> . . . . In *Kennedy v. Spalding* (1936) 143 Kan. 76, 53 P. (2d)

Lewis v. Lewis Nursery, Inc.

804, the court held that nursery stock two or more years old did not constitute "crops," defining that term as any product of the soil grown and raised annually and gathered during a single season. . . .

125 A.L.R. at 1415.

The type of strawberry plants involved in the case at bar are raised annually and gathered during a single season. In contrast, trade fixtures generally are items designed to adapt the premises to the tenant's business. 35 Am. Jur. 2d *Fixtures* Sec. 40 (1967). They are, for example, machinery; mining, agricultural, industrial or other specialized equipment; particular buildings; heating, cooling, electrical, plumbing and refrigeration systems; storage facilities; and some specialized appliances. *See generally id.* Secs. 75-127, at 759-97. We have found no cases in this jurisdiction identifying the end product of a trade or business as a trade fixture. *Cf., e.g., Ilderton Oil Co.* (storage tank, pump, and accessory equipment); *Stephens* (storage tanks); *Causey v. Orton,* 171 N.C. 375, 88 S.E. 513 (1916) (poultry houses and fences); *Asheville Woodworking Co. v. Southwick,* 119 N.C. 611, 26 S.E. 253 (1896) (bar counter and bar fixtures); *Deal* (railroad depot building).

We conclude that the strawberry plants in this case were personalty; they were not affixed to the realty so as to become part of it. But they were not "trade fixtures" as that term is defined and applied in this State. The plants were annual yield in the nature of crops, to be gathered in a single season. Therefore, if the jury finds that the lease was for less than one year, Nursery would have been a tenant at sufferance after 31 December 1978, and it would not be entitled to emblements. The proceeds from the sale of the plants would belong to Lewis.

For the reasons stated in Part II of the opinion, the judgment of the trial court is reversed, and the case is remanded for a jury trial on whether the lease was for one year or for less than one year. We affirm on all other issues.

Reversed and remanded in part and affirmed in part.

Judges WEBB and COZORT concur.