IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-582

No. COA 20-802

Filed 2 November 2021

Mecklenburg County, No. 20-CVS-2194

DAVID BAYNE ALEXANDER, et al., Petitioners,

v.

DIANE K. BECKER and THOMAS H. BECKER, Co-Trustees of the Diane K. Becker
Revocable Living Trust dated December 19, 2008, et al., Respondents.

Appeal by Petitioners from judgment entered 25 August 2020 by Judge George

Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 9 June

2021.

> *Alexander Ricks, PLLC, by Roy H. Michaux, Jr. and Ryan P. Hoffman, for*
> *Petitioners-Appellants.*
>
> *The Mcintosh Law Firm, P.C., by Christopher P. Gelwicks, for the Respondents-*
> *Appellees.*

DILLON, Judge.

¶ 1        This matter involves a dispute among unit owners within a certain residential

condominium development located in Mecklenburg County. The dispute concerns

whether it is the unit owner's association *or* the unit owners respectively who bear

the responsibility to maintain and insure the outer walls, roofs, etc. Essentially,

certain owners of the small units contend that the responsibility falls to each unit

owner, while certain owners of the larger units contend that these structures are common elements and that the association bears the responsibility to maintain them.

## I. Background

The Courtyard of Huntersville (the "Community") is composed of fifty-one (51) residential units. Unlike many other condominium developments, each unit in the Community is located in its own free-standing, single-family dwelling structure. In other words, the Community outwardly resembles a single-family, residential subdivision made up of separately owned, single-family homes. However, the Community is, *legally*, a condominium,[1] established under a Declaration of Condominium (the "Declaration"), which heavily mirrors the North Carolina Condominium Act (the "Condominium Act"). Therefore, the occupant of a single-family structure within the Community does not actually own the outer walls of his/her structure, but rather only the air and walls within the outer walls.

The individual owners belong to a unit owners' association (the "Association"), as contemplated in the Declaration.

## II. The Dispute

---

[1] The term "condominium" is often understood colloquially to refer to a particular unit. However, the term *legally* refers to the condominium development as a whole. *See* N.C. Gen. Stat. § 47C-1-103(7) (2020). Accordingly, "condominium" as used in this opinion refers to a development as a whole. "Unit" or "condominium unit" refers to an individual unit within a condominium development.

¶ 4 This dispute concerns whether it is the Association's responsibility to maintain and insure the roofs, outer walls (including siding), and gutters outside the outer wall of each single-family structure, or whether the responsibility lies with each unit owner to maintain these outer structures serving the unit (s)he lives in.

¶ 5 The answer is meaningful economically to the unit owners as the structures are of different sizes. Some unit owners live in structures that are twice as big as the structures other unit owners live in. Petitioners are owners of some of the smaller units. They contend that it is the responsibility of each unit owner to maintain the building which houses his/her unit. The Association Board and other unit owners, though, take the position that it is the Association which is responsible for maintaining the structures such that the costs would be borne more equally among the unit owners.

¶ 6 In any event, the answer depends, at least in part, on how these real estate components (the roofs, outer walls, and gutters) are classified in the Declaration and the Condominium Act.

¶ 7 Specifically, under the Declaration, each property component within the Community is classified as *either* Unit Property *or* a Common Element.

¶ 8 "Unit Property" consists (with some exceptions) of the real estate within the outer walls of each unit, such as the interior walls or fixtures within a unit. A declaration *may* designate certain real property serving a single unit, but located

outside the interior walls, as "unit property." For example, in the Declaration, a pipe leading to and serving a single unit is classified as unit property. Pursuant to the Declaration, it is generally the responsibility of each unit owner *to repair/maintain* the unit property designed to serve only his/her unit. For instance, each unit owner pays for the repainting of the interior walls in his/her unit. The Declaration, though, does provide that the Association bears the responsibility *to insure* such unit property against certain perils, such as fire. Therefore, if a building is struck by lightning and burns down, the Association insurance covers the reconstruction, not only of the outer shell of each building, but also the interior walls and most fixtures.

¶ 9 A "Common Element" is defined by the Declaration as any real property that is not unit property. This is consistent with the definition under the Condominium Act, which defines common elements as "all portions of the condominium other than the units." N.C. Gen. Stat. § 47C-1-103(4).

¶ 10 There is a subset of the common elements defined in the Declaration and the Condominium Act as "Limited Common Elements." Essentially, a common element designed for "the exclusive use of one or more but fewer than all of the units" is a "limited common element." For instance, the roof over a building that contains one or a few units within a development is a limited common element. However, if a common element is designed to serve *all* units, then that common element is not a limited common element. For instance, the club house and pool within a

condominium development are common elements, as they are designed to serve *all* unit owners.

¶ 11       Unlike most condominium components, the limited common elements within the Community that are the subject of this action each serve only one unit. That is, no limited common element serves more than one unit. This is because each unit is housed within its own structure. No two units share the same structure.

¶ 12       Petitioners take the position that the outer walls, roof, and gutters of a building and serving a particular unit are limited common elements. As such, under the Declaration, the obligation to repair, maintain, and insure the roof, exterior walls (including siding), and gutters on a particular building falls on the owner whose unit is located within that building.

¶ 13       Respondents (and the Association Board) take the position that these components are common elements which do not fall within the subcategory of limited common elements. As such, the responsibility to repair, maintain, and insure falls on the Association as a whole, with the costs borne by all the unit owners through the payment of dues.

¶ 14       After a hearing on various motions, the trial court entered summary judgment for Respondents, essentially agreeing with the Association Board's position that the Association bears the burden of maintaining the structures. Petitioners appealed.

### III. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2020). We review an order granting summary judgment *de novo*. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

## IV. Analysis

We have reviewed the record and briefs in this matter, and we conclude as follows:

(1) the outer walls, roof and gutters on a building housing a unit are limited common elements pursuant to N.C. Gen. Stat. 47C-2-102(4);

(2) the Association is responsible for insuring all limited common elements, including the outer walls, roof and gutters of each building, against "loss or damage by fire, lightning, and such other perils" listed under Article X of the Declaration, and that said insurance shall be "paid for by the Association as a Common Expense," as provided under Article X, Section 1(g); and

(3) the responsibility to repair and maintain the walls, roof and gutters of a residential building is borne by the owner of the unit housed in that building. The Association has no responsibility to maintain and repair these components (except to the extent covered by insurance that the Association must maintain under Article X of the Declaration).

We so conclude based on the reasoning below.

## A. Limited Common Elements

The outer walls, roof, and gutters do not fall within the definition of unit property as defined by the Declaration. Accordingly, they are common elements. The issue then becomes whether they are within the subset of common elements, known as limited common elements. (We note that there is a strong argument that the gutters are unit property as being a type of "pipe" serving a single unit. However, as explained below, even if they are properly categorized as unit property, the unit owners are still responsible for their maintenance and repair while the Association is responsible for insuring them.)

As it was developed after 1986, the Community is governed by the Condominium Act. *See* N.C. Gen. Stat. § 47C-1-102(a) ("This Chapter applies to all condominiums created within this State after October 1, 1986.") The Condominium Act defines a limited common element as any "portion of the common elements allocated by the declaration or by operation of G.S. 47C-2-102(2) or (4) for the exclusive use of one or more but fewer than all the units." N.C. Gen. Stat. § 47C-1-103.

It is undisputed that the outer walls, roofs, and gutters in question each serve fewer than all the units. In fact, they each serve one unit, as each building houses a single unit. Accordingly, the walls, roof, and gutters are limited common elements if *either* they are defined as such in the Declaration *or* if they are defined as such under

N.C. Gen. Stat. § 47C-2-102(2) or (4).

It is not clear from the record that the outer walls, roofs, and gutters fall within the definition of limited common element as set forth in the Declaration. The Declaration does include within the definition of limited common element those "bearing walls" and "fixtures" which lie "partially within and partially outside the designated boundaries of a Unit" and which serve only one unit. However, the gutters, roofs, and siding seem to be located completely outside the boundaries of the unit and, therefore, do not fall within the Declaration's definition of limited common element.

Nonetheless, the outer walls, roofs, and gutters do fall within the definition of limited common element as defined in Section 47C-2-102(4). That statute includes within the definition of limited common element "all exterior doors and windows *or other fixtures designed to serve a single unit but located outside the unit's boundaries*" unless the declaration provides otherwise. *Id.* (emphasis added). In other words, each exterior fixture[2] serving a single unit is a limited common element unless that fixture is otherwise defined as something else in the declaration. If the declaration

---

[2] Chapter 2 of *Webster's Real Estate Law in North Carolina* recognizes that fixtures include any chattel affixed to the land, which can include a building or parts thereof. Our Supreme Court has recognized that a building can be a fixture if there was an intent at the time it was built to become part of the land upon which it was erected. *See Lee-Moore v. Cleary*, 295 N.C. 417, 420-21, 245 S.E.2d 720, 722-23 (1978).

is silent regarding the classification of a type of exterior fixture serving a single unit, then the fixture is deemed a limited common element by virtue of Section 47C-2-102(4).

Here, the Declaration does list various components of the real property that are to be regarded as limited common elements. The Declaration, though, does not expressly categorize the exterior walls, roofs, or gutters or otherwise contain language that limits the definition of limited common elements to those components expressly mentioned. Accordingly, they are limited common elements by operation of Section 47C-2-102(4). *See* N.C. Gen. Stat. § 47C-1-103(13) (defining "limited common elements" as those common elements listed in Section 47C-2-102(4)).

## B. Insurance Obligations

Since the outer walls, roofs, and gutters are limited common elements, the Declaration puts the onus on the Association to insure them against certain perils. Specifically, Article X of the Declaration[3] states as follows:

> Section 1. <u>Fire and Extended Coverage Insurance</u>. The
> Board shall have the authority and *shall obtain insurance*

---

[3] Appellants reproduced Article X of the Declaration as an exhibit to their brief. Our dissenting colleague correctly notes that only portions of the Declaration – which do not include Article X – were included in the record on appeal that is before us. We note, however, that the Declaration in its entirety is recorded in the Mecklenburg County Register of Deeds. We, therefore, take judicial under N.C. Gen. Stat. § 8C-1, Rule 201(b) (2020) of the Declaration, including Article X, as recorded. *See In re Hackley*, 212 N.C. App. 596, 601, 713 S.E.2d 119, 123 (2011) (taking judicial notice of a recorded deed, a copy of which was attached as an exhibit to the appellant's brief).

> *for all buildings, structures, fixtures . . . constituting a part* of the Common Elements, [and] *the Limited Common Elements* . . . against loss of damage by fire, lightning, and such other perils as are ordinarily insured against by standard extended coverage endorsements, and all other perils which are customary covered with respect to projects similar in construction, location and use[.]

(Emphases added.)

Petitioners argue that the gutters are actually Unit Property rather than limited common elements. Specifically, Petitioners point to Article V of the Declaration, which includes within the definition of unit property "pipes" that serve "only one unit" whether "located inside or outside the designated boundaries of a Unit[.]" Petitioner contends that a gutter is a "pipe" as contemplated in this definition. We disagree. However, even if Petitioners are correct, Article X of the Declaration requires that such unit property also be insured by the Association:

> This insurance shall also . . . provide coverage for built-in or installed improvements, fixtures and equipment that are part of a Unit[.]

Further, Section 1(g) of Article X requires that the insurance "be paid for by the Association, as a Common Expense."

The unit owner, though, is not prohibited by the Declaration from obtaining insurance for the same loss, though the insurance purchased by the Association shall "be primary[.]" Article X, Section 1(j).

### C. Repair and Maintenance Obligations

Even though the Association has the obligation to provide insurance coverage for the exterior walls, roofs, and gutters against certain perils, the Declaration provides that the unit owners respectively are responsible for their repair and maintenance. Specifically, Article VIII of the Declaration directs that the unit owners respectively are responsible for the repair and maintenance of any limited common element serving his/her unit *except for* the two parking spaces outside each unit serving that unit, each unit's private exterior entrance, and each unit's front porch.

And assuming that the gutters are unit property, it is still the unit owner who is responsible for their repair under Article VIII.

## V. Conclusion

We conclude that the exterior walls, roof, and gutters on each residential building are limited common elements. We conclude that the Association must maintain insurance for these elements against certain perils as provided in Article X of the Declaration. As such, the Association may collect dues to pay for this insurance. We also conclude that each unit owner is responsible for the repair and maintenance of these elements serving his/her unit.

We, therefore, affirm in part and reverse in part the trial court's order and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judge ZACHARY concurs.

Judge HAMPSON concurs in part and dissents in part.

HAMPSON, Judge, concurring in part and dissenting in part.

¶ 31     I agree with the majority opinion that this matter must be remanded to the trial court for further proceedings.  I also tend to agree with the majority opinion, at least on the limited Record before us, the repair and maintenance obligations for the condominium units fall on the individual unit owners.  I dissent in limited part, however, based on the scope of the remand and, specifically, as it relates to the insurance coverage obligations.

¶ 32     The majority opinion hits on what I perceive as the key issue in this case: the interplay of the Condominium Declaration and the Condominium Act.  Specifically, the question is whether the Declaration at issue here was intended to supplement the provisions of the Condominium Act or, alternatively, to vary from the provisions of the Condominium Act.  My supposition, given the individualized nature of the condominium units here—more in the nature of stand-alone single-family dwellings—is that the original intent was to modify and vary from the Condominium Act's provisions to accommodate the fact these units operate more as single-family residences than as traditionally imagined "condos."  The problem, however, is that absent from the Record before us, and thus presumably before the trial court, is a full version of the Declaration from which to be sure.  The parties instead rely only on excerpts (and incomplete ones at that) to argue for their respective positions.  For example, we are provided with multiple copies of Article VI titled Common and Limited Common Elements, which simply cuts off in mid-sentence while defining

*HAMPSON, J., concurring in part and dissenting in part.*

Limited Common Elements.  Therefore, I am unsure what the rest of this Article says let alone intends.  Thus, any supposition about the intent of the Declaration on the Record before us is just that: supposition.

¶ 33        Relatedly, the parties fail to engage on the underlying legal question: to what extent a Condominium Declaration may vary the terms of the Condominium Act.  Ultimately, then there are two central questions left unanswered here: (1) does the Declaration supplement the provisions of the Act or attempt to vary from the provisions of the Act; and (2) if the Declaration varies from the Condominium Act (rather than supplementing the Act), does it do so in a way that is consistent or permissible under the Condominium Act?

¶ 34        In the absence of answers to these two questions, entry of judgment in this matter was premature.  Consequently, I would simply vacate the trial court's Judgment in full and remand this matter to permit further proceedings.